Argued and submitted December 10, 1979,
reversed and remanded March 10, 1980

ANNETT, et ux,
*Appellants,*
*v.*
POST, et al,
*Respondents.*

(No. 78-1127, CA 14356)

607 P2d 785

Martha W. Reidy, Eugene, argued the cause for appellant. On the briefs were Leslie M. Swanson, Jr., and Johnson, Harrang & Mercer, Eugene.

Jon Littlefield, Coos Bay, argued the cause for respondents. With him on the brief was Foss, Whitty & Roess, Coos Bay.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.

JOSEPH, P.J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## JOSEPH, P.J.

Plaintiffs were collectors of the new, the old, the used and the antique. Early in 1978 they leased defendants' warehouse to store their accumulation. Shortly afterwards the building and the collection burned. Plaintiffs brought this action for negligence, claiming damages of $40,000 for loss of their personal property and $50,000 for emotional distress. The jury found defendants liable and awarded plaintiffs $2,500 damages. Plaintiffs appeal.

Two questions are raised on appeal, but we consider only one.[1] Plaintiffs argue that the trial judge erred in permitting defendants' expert to testify, over objection, to the value of the inventory of his own new and used furniture business as a basis for discrediting the plaintiffs' evidence of value of their property. They contend that evidence of the bulk value of inventory in the witness' business was not relevant to their loss of personalty.

Defendants' expert witness, Mr. Newton, owned a new and used furniture business. On direct examination he testified that he had reviewed a partial list of the items identified as remains after the fire and plaintiffs' detailed itemization of the lost property and was able to place values on approximately one-half of the personalty. He concluded that the value of that portion was $3,194. His testimony on direct examination continued as set out in the margin.[2]

[1] Plaintiffs failed to make an offer of proof when the trial court sustained objections to certain of their questions on direct examination. We, therefore, cannot consider that assignment of error. *Rudie Wilhelm W'house v. Royal Ind.,* 271 Or 701, 533 P2d 1368 (1975); *Hall v. Banta,* 283 Or 387, 583 P2d 1139 (1978).

[2]
"Q. In arranging for the sale of your business have you consulted with anyone else to assist you with that?

"A. Not on the property, the furniture or anything like this.

"Q. The sale price you are asking for that is based on your own opinion of what it is worth?

"A. Yes.

"Q. What is the sale price that you are asking—

"MR. SWANSON: (Interposing) Well, I will object, ***.

"Q. Well, my question simply is, you have your business for sale and you have average inventory in there and you have described the nature of the contents and the size of the building, and I would like to know how much you are asking the general public for that.

"A. For—

"MR. SWANSON: (Interposing) Your Honor, I do object, and I want to make my objection known before he answers.

"The basis of the objection, of course, is, Your Honor, that there is no foundation and there would be no basis for any comparison of values between a furniture store and the kinds of items, the great variety and breadth of items that Mr. Annett had and lost in the fire. We could bring somebody in here from a Chevrolet garage and ask them the value of their inventory if we were going to compare automobile parts, but this evidence would be simply irrelevant and immaterial.

"* * * * *

"THE COURT: Well, the objection will be sustained as it stands because your question isn't limited, but if you are going to ask him as to what he values his present inventory at, then the objection will be overruled. The question then is what weight should be given to the testimony.

"MR. LITTLEFIELD: May I inquire just a bit further, then, Your Honor?

"THE COURT: You may.

"Q. Mr. Newton, you have reviewed the list of items that were actually found in this fire. Is that the nature of material that you generally had in your business?

"A. Quite well, quite a bit so, yes, except the machinery part.

"Q. You do not carry machinery?

"A. Which I—

"Q. (Interposing) Which you have declined to comment on?

"A. Yes.

"Q. What is the value, then, that you put upon your inventory in your store?

"MR. SWANSON: The same objection, Your Honor.

"THE COURT: All right. Your objection will be overruled. You may have your exception.

"A. You want me to answer?

"Q. Yes.

[124]

Establishing the value of property by comparing it to the value of other property must meet the test of relevancy. Generally, such evidence is relevant only when the properties are substantially similar in condition. II Wigmore, Evidence, §§ 463, 464; *see,* McCormick, Evidence, § 199 (2d Ed E. Cleary 1972). The witness' testimony regarding his estimate of the sale value of his bulk inventory was irrelevant to the issue properly before the jury: the value of plaintiffs' losses. There was no showing that the properties were similar in number, variety, quality, age or individual value. Neither was there any evidence that the inventory even contained similar merchandise except the witness' testimony that his business had "quite a bit" of the same "nature of material" "except the machinery part." Plaintiffs' claimed losses included very large amounts of "machinery": automotive parts, automobiles, and farming equipment, as well as antiques and hundreds of other items.

The witness' testimony was not evidence of the value of articles sufficiently identical or similar for the price to be indicative of the value of plaintiffs' loss. *See Hall v. Banta,* 283 Or 387, 583 P2d 1139 (1978); *Wall v. S.E.C. Co.,* 270 Or 553, 528 P2d 1054 (1974). That evidence should have been excluded.[3]

---

"A.   The business—the inventory—

"Q.   (Interposing) Let me just qualify that. I am not talking about real property, the building or anything. I am just talking about your inventory and your good will, if you wish to put that in.

"A.   $5,000, and that includes everything except my own personal tools and a few items that we have reserved, and anyone having been in my store knows that I have, probably, the variety and the amount that he might have had in his shed.

"MR. SWANSON:   Well, Your Honor, I will have to ask that the response be stricken, as it was unresponsive to the question.

"THE WITNESS:   I am sorry.

"THE COURT:   All right, the motion to strike will be allowed."

[3] Plaintiffs assert that the jury applied the improper evidence of the value of the inventory of the store, ($5,000) to arrive at their verdict

While the record is not entirely clear, the motion to strike granted at the close of Mr. Newton's testimony appears to have been intended as a ruling that the final statement of the witness ("and anyone having been in my store knows that I have, probably, the variety and the amount that he might have had in his shed") was to be stricken from the record. That ruling was proper; however, it did not cure the error of allowing the prejudicial testimony comparing and valuing property of unknown and dissimilar characters. *See Hepler v. Santerno,* 244 Or 246, 417 P2d 390 (1966).

The case must be remanded for a new trial, but only on the damages issue. *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 546 P2d 1065 (1976); *Criqui v. Pearl Music Company,* 41 Or App 511, 599 P2d 1177, *rev den* (1979).

Reversed and remanded.

---

($2,500), since they learned from other evidence that the witness' business floor area was approximately twice as large as the warehouse. While that may be true since there was no evidence that the value of plaintiffs' personalty was below $3,000, we generally presume that erroneously admitted evidence is prejudicial unless the contrary is shown. *Elam v. Soares,* 282 Or 93, 577 P2d 1336 (1978); *Samuel v. Vanderheiden,* 277 Or 239, 560 P2d 636 (1977).