702 P.2d 1010

**LANDMARK, LIMITED,**
**Protestant-Appellant,**

v.

**BERNALILLO COUNTY ASSESSOR,**
**Respondent-Appellee.**

**No. 7820.**

Court of Appeals of New Mexico.

April 2, 1985.

Certiorari Quashed June 5, 1985.

John P. Salazar, Shannon L. Donahue, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for protestant-appellant.

Ira Robinson, Albuquerque, for respondent-appellee.

## OPINION

DONNELLY, Chief Judge.

On rehearing, the previous opinion is withdrawn and the following is substituted.

Landmark Limited (Taxpayer), appeals from an administrative order of the Bernalillo County Valuation Protests Board (Board), upholding the Bernalillo County Assessor's (Assessor) valuation of the property upon which Taxpayer's apartment complex is located. On appeal, Taxpayer raises four issues. We find the first issue, whether the assessment of Taxpayer's property was in accordance with the law, dispositive of the appeal. Reversed and remanded.

## FACTS

Taxpayer has owned the Landmark, Ltd., an apartment building, and 3.2567 acres (140,862 square feet) of appurtenant land since 1970. The building and surrounding property has been used primarily for residential purposes. As shown by Board's exhibit 2 admitted into evidence, the single tract of land embracing Taxpayer's property falls within two diverse city zoning areas.[1] The northern two-thirds of Taxpayer's property abutting Jeannedale Drive is zoned C–2 (commercial). The remainder of the parcel, primarily adjoining Indian School Road and the portion underlying the Landmark apartment building, is zoned R–3 (residential). Taxpayer and Assessor have agreed that the property was utilized for residential purposes for the 1983 tax year.

Taxpayer's property was reassessed by Assessor in 1983 pursuant to a county reassessment program. In the 1983 Notice of Value, the Assessor determined the value of Taxpayer's land, exclusive of the apartment building, to be $567,448.00 or $4.00 per square foot. For assessment purposes the building was separately valued at $1.00 per square foot. In response to the 1983 assessment, Taxpayer filed a protest pursuant to NMSA 1978, Section 7–38–24 (Repl. Pamp.1983), challenging the valuation of the land. Taxpayer did not dispute the value placed on the apartment building. In its petition protesting the Assessor's valuation of the land, Taxpayer estimated the value of its land to be $283,724.00. During the subsequent hearing on its protest, Taxpayer amended its estimate on the value of the land to $141,862.00 or $1.00 per square foot.

At the protest hearing before the Board, Assessor presented two county appraisers who testified as to the 1983 market value of Taxpayer's property. Each predicated their opinion upon comparable sales of three tracts of land located within a one mile radius of the Landmark. The compa-

rable sales relied upon by the Assessor occurred in 1972, 1973, and 1974 and involved tracts zoned C–3 (commercial), R–3 (residential), and C–2 (commercial), respectively. The three "comparables" were sold as undeveloped acreage and the prices of the tracts ranged from $4.68 to $5.60 per square foot. The sales price on the three comparable tracts were adjusted by the Assessor to 1975 market values. Assessor claims the comparables presented by his staff appraisers after adjustments uphold the valuation of the Landmark property at $4.00 per square foot.

The Taxpayer called an appraiser, Roland J. Fletcher, as an expert witness. Fletcher testified that he used the market value method to appraise the value of the Taxpayer's land and that he found eight comparable sales of residential properties situated within three miles of the Landmark. The eight comparable sales relied upon by Fletcher occurred between 1973 and 1978. Fletcher testified that each of the sales were of vacant land acquired for apartment development, ranging in price from $.55 to $1.20 per square foot. The witness stated that, according to these comparables, it was his opinion that the 1975 market value of Taxpayer's land was between $1.00 and $1.25 per square foot.

Based on the evidence presented at the protest hearing, the Board filed an order adopting findings of fact providing, *inter alia:*

> 18. The Landmark Building * * * is used primarily for permanent human habitation.
>
> 19. The subject property * * * *is residential property* * * *.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 24. The market value of the subject property in 1975, as determined by sales of comparable property, is determined by analyzing sales of similar recently sold properties * * *.
>
> \*　　\*　　\*　　\*　　\*　　\*

1. A copy of Assessor's exhibit 2 is attached to this opinion. The exhibit indicates the dual zoning of Taxpayer's property existed in 1983.

29. In each case, the comparable [sales] contended by the property owner was a sale of vacant land, being acquired for the purpose of placing an apartment building on the land.

\* \* \* \* \* \*

31. On the other hand, the County Assessor contended at the hearing before the Board that the valuation placed on the property \* \* \* *is a uniform and accurate value applied by the Assessor to all land values in the area.*

32. The Assessor contended that the value placed upon the subject property \* \* \* is part of \* \* \* placing a *single uniform value* on land in various areas of the city.

\* \* \* \* \* \*

36. \* \* \* all but one of the comparables presented by the Assessor were sales of property zoned commercial. [Emphasis added.]

Following the protest hearing, the Board entered an order denying Taxpayer's protest of the valuation of the land. The Board upheld the Assessor's valuation of the land "for the tax year 1983, [at] $567,448, which is $4.00 per square foot, or $173,356.26 per acre," and concluded that "the evidence presented did not show that [Assessor's] value [was] incorrect \* \* \*."

## VALIDITY OF ASSESSMENT

Was the proper method utilized by the Assessor to determine the 1983 market value of Taxpayer's land? The answer to this question involves both compliance with the directives of NMSA 1978, Section 7–36–21.1 (Repl.Pamp.1983) (special method of valuation for residential property) and application of standard appraisal techniques. Section 7–36–21.1 requires that the tax valuation of "residential property" during 1983 be based upon its 1975 market value "as determined by sales of comparable property."

Taxpayer argues that "comparable property", within the context of the special statute for valuation of residential property (Section 7–36–21.1), means comparable "residential" property. In opposition, Assessor argues that the Coronado Center area, where the Taxpayer's property is situated, is unique because it encompasses some of the most valuable realty in Albuquerque. Assessor argues that in determining the value of Taxpayer's land for 1983 property assessment purposes, he is not bound to compare the property only with other similar "residential" properties, but instead may utilize comparable sales of similar properties in the Coronado Center area, irrespective of whether the properties relied upon as "comparables" are in fact commercial or residential.

The general rule is that evidence of comparable sales is admissible in support of the opinion of an expert about the market value of a parcel of real estate. *State ex rel. Department of Highways v. Aker,* 507 P.2d 1227 (Okla.1973); *State v. Dillingham Corp.,* 60 Hawaii 393, 591 P.2d 1049 (1979); *Montana State Highway Commission v. Jacobs,* 150 Mont. 322, 435 P.2d 274 (1967). *See also* NMSA 1978, Evid.R. 702, 703 (Repl.Pamp.1983). Evidence of comparable sales is generally admissible to aid the trier of fact in determining the value of property where the sales are bona fide and voluntary, are sufficiently near in time, location, and size, and are sufficiently alike in character, situation, usability and improvements. *Peterson Properties, Del Rio Plaza Shopping Center v. Valencia County Valuation Protests Board,* 89 N.M. 239, 549 P.2d 1074 (Ct.App. 1976). *See also Maricopa County v. Sperry Rand Corp.,* 112 Ariz. 579, 544 P.2d 1094 (1976).

In establishing the value of property, evidence of the value of comparable property must meet the test of relevancy. Whether the requisite degree of similarity exists for the purpose of admitting evidence of alleged comparable sales is largely within the discretion of the trial court. *Transwestern Pipe Line Co. v. Yandell,* 69 N.M. 448, 367 P.2d 938 (1961). However, evidence of other sales is relevant only where the properties are substantially similar in condition. *Annett v. Post,* 45 Or.

App. 121, 607 P.2d 785 (1980); *Lippert v. Angle,* 211 Kan. 695, 508 P.2d 920 (1973).

In 1981 the legislature enacted a special statute (Section 7–36–21.1) in order to standardize certain county property reassessment practices. Section 7–36–21.1 provides in applicable part:

A. All residential property subject to valuation for property taxation purposes by the county assessor shall be valued in accordance with the provisions of this section.

B. For the 1982 through the 1985 tax years, *the value for property taxation purposes of residential property* that was valued for property taxation purposes in the 1975 tax year shall be its *market value in 1975* as determined *by sales of comparable property* and:

(1) increased by the full value of any physical improvements made to the property during the period from January 1, 1975 to January 1 of the year in which the value for property taxation purposes is being determined;

(2) *increased by any increment of value resulting to the property from any rezoning or similar action of a governmental body that has resulted in a change of permitted use of the property since January 1, 1975 * * *.* [Emphasis added.]

█ Two of the three parcels of land utilized as "comparables" by the Assessor consisted of tracts of land zoned commercial and developed for office use. Ramona Nuzzo, a staff appraiser employed by Assessor, testified that the three comparable sales of property she relied upon in arriving at her opinion of the market value of Taxpayer's property, involved tracts which were zoned at the time of the sale as R–3 (permitting houses, townhouses and apartments), C–2 (community commercial zone), and C–3 (heavy commercial zone). Assessor contends that the market value of Taxpayer's property should be determined according to the highest and best use of the property permitted under the zoning laws. Assessor argues that since the land in question could be used either for residential or commercial purposes, an appraiser should look to the highest and best permitted use of the property in determining market value for tax valuation. Generally, market value is determined by the most valuable and best use to which property could reasonably, practically and lawfully be used. *Masheter v. Ohio Holding Co.,* 38 Ohio App.2d 49, 313 N.E.2d 413 (1973), *cert. denied,* 419 U.S. 835, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974); *see also* Encyclopedia of Real Estate Appraising 22 (E. Friedman ed. 1976).

█ By statutory provision, a valuation fixed by the Assessor is presumed to be correct unless the presumption is rebutted by the Taxpayer. NMSA 1978, § 7–38–6 (Repl.Pamp.1983); *see also Bakel v. Bernalillo County Assessor,* 95 N.M. 723, 625 P.2d 1240 (Ct.App.1980). The presumption of correctness may be rebutted and once it is rebutted, the burden shifts to the Assessor to show a correct valuation. *Id. See also Petition of Kinscherff,* 89 N.M. 669, 556 P.2d 355 (Ct.App.), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976).

In the present case, Taxpayer offered sufficient evidence to overcome the presumption of a correct valuation of its property. The language of Section 7–36–21.1 precludes valuation of residential property[2] for tax purposes based on comparative sales of non-residential[3] properties unless the permitted use of the property has changed. The title to Laws 1981, ch. 37, enacting Section 7–36–21.1 contains an insight to legislative intent at the time the statute was adopted. The title states: "An

---

**2.** "Residential property" is "[p]roperty consisting of one or more dwellings together with appurtenant structures, the land underlying both the dwellings and the appurtenant structures and a quantity of land reasonably necessary for parking and other uses that facilitate the use of the dwellings and appurtenant struc-

tures * * *." NMSA 1978, § 7–35–2(I) (Repl. Pamp.1983).

**3.** "Non-residential property" means property that is not residential property. Section 7–35–2(E).

act relating to taxation * * * creating residential and non-residential classes of property for taxation purposes; *establishing a special method of valuation for residential property;* changing certain provisions relating to the administration of the property tax and other tax laws * * *." [Emphasis added.]

Section 7–36–21.1, as it relates to the mode of determining the market value of residential property for property tax purposes, evidences an intention that the market value of the taxpayer's property be determined by looking to the value of other comparable "residential property" and not on the basis of comparable sales of non-residential property.

■ The record does not indicate that the market value of Taxpayer's property was determined in accord with the statute. Assessor relied upon comparable sales, some of which were of non-residential properties, in arriving at his valuation. While this approach would be proper in fixing the value of that portion of Taxpayer's property which has been subsequently rezoned C–2, use of comparable sales of non-residential properties to value that portion of Taxpayer's lands which were zoned residential is contrary to the clear import of Section 7–36–21.1. The term "comparable property" as utilized in Section 7–36–21.1(B) means other similar "residential" property.

It is a fundamental rule of appraisal that in determining the market value of a tract of land, valuation must be based upon the highest and best use for which the property may be used. As noted in the Encyclopedia of Real Estate Appraising, ch. 1 at 8, each appraisal requires a study by the appraiser as to the property's "highest and best" use, and;

> [t]he question of highest and best use becomes particularly pertinent when the subject property is compared with other properties in the neighborhood which have recently been sold, and the logical or permissive uses to which these sold properties may be put in comparison with the subject property * * *. *If a logical or permissive use of the subject property is residential only, the sale of a commercial site is scarcely, if ever, pertinent for comparison purposes, even though the two properties [may] adjoin one another.* [Emphasis added.]

Section 7–36–21.1(B) directs that the portion of Taxpayer's property which falls within the area zoned residential be valued based only upon comparable sales of other similar residential properties. The remaining portion of Taxpayer's parcel which has been rezoned commercial is not subject to the use of comparable residential sales limitation imposed by the statute. However, the statute does require that residential property be increased in value if rezoning has enhanced the property's worth. Since Taxpayer's property is a single unit, although intersected by two different zoning areas, under the provisions of Section 7–36–21.1, the Assessor must determine the value of the two differently zoned areas of the property based upon comparable sales of "similar" properties and upon their respective highest and best uses. Then, a single market value must be determined for the entire tract after making appropriate adjustments for the fact of the bifurcated zoning of the property.

■ Where a method of valuation is specified by law, an Assessor has a duty to follow the statute. *First National Bank v. Bernalillo County Valuation Protest Board,* 90 N.M. 110, 560 P.2d 174 (Ct.App. 1977). Calculations by an Assessor not in accord with the basic requirements of statutes prescribing a method of assessing properties for tax purposes will render the decision void. *La Jara Land Developers, Inc. v. Bernalillo County Assessor,* 97 N.M. 318, 639 P.2d 605 (Ct.App.1982).

The administrative order appealed from is reversed and the cause is remanded with instructions to reassess Taxpayer's property in accordance with the provisions of Section 7–36–21.1 and consistent with this opinion. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

NEAL and ALARID, JJ., concur.