717 P.2d 1123 (1986)
104 N.M. 154
In the Matter of the PROTEST OF PLAZA DEL SOL LIMITED PARTNERSHIP, et al., Appellants,
v.
ASSESSOR FOR the COUNTY OF BERNALILLO, New Mexico, Appellee.
No. 8194.
Court of Appeals of New Mexico.
February 25, 1986.
Certiorari Denied April 18, 1986.
*1125 Avelino V. Gutierrez, Albuquerque, for appellants.
Ira Robinson, Albuquerque, for appellee.

OPINION
DONNELLY, Chief Judge.
On rehearing, the previous opinion is withdrawn and the following is substituted.
This is an administrative appeal by protestants Plaza del Sol, and Plaza Maya, Limited Partnership, (Taxpayers), from the decision of the Bernalillo County Valuation Protests Board (Board), challenging the values placed upon their respective properties for the years 1983 and 1984. Taxpayer, Rosalea C. de Baca, also challenges the decision of Assessor valuing her unimproved land for the tax year 1984.
Taxpayers contend on appeal that: (1) in determining 1983 and 1984 tax values, the Board failed to use tax values agreed upon in a prior tax protest hearing; (2) the Board erred in not accepting Taxpayers' valuations of the properties; (3) the valuations set by Assessor and the Board are excessive and discriminatory; and (4) the protests were not timely decided by the Board, and hence, the assessments and valuations fixed are invalid. Reversed and remanded, with instructions for further proceedings.
In their protest, Taxpayers challenge Assessor's valuation on the land and improvements of Plaza del Sol and Plaza Maya for 1983 and 1984, and on the unimproved land of Rosalea C. de Baca for 1984. The three tracts of non-residential property owned by Taxpayers are located in the downtown, core area of Albuquerque between Lomas Boulevard and Roma Avenue.
At the protest hearing, Assessor relied upon the testimony of two appraisers from the Bernalillo County Assessor's office, Dave Romo and Ramona Nuzzo. The assessed valuation placed upon Taxpayers' properties in the 1984 Notice of Value, were: Plaza del Sol $3,375,030, Plaza Maya, $1,485,791, and C. de Baca land $113,640. In contrast with Assessor's valuations, Bernard Rolfe, an assessor employed by Taxpayers, testified that the values of the three tracts were: Plaza del Sol $1,836,600, Plaza Maya $964,900, and the C. de Baca land $66,290.
At the hearing, Taxpayers challenged the right of the Board to modify its tax assessments set in 1975 and contended that Assessor was bound by a written stipulation, previously approved by him, fixing the valuation of Plaza del Sol improvements for 1976 at $1,500,000 and Plaza Maya improvements for 1981 and 1982 at $559,625. On October 12, 1984, the Board adopted an order lowering Assessor's valuations of the Plaza del Sol and Plaza Maya improvements and sustaining the assessed value of the C. de Baca unimproved land. It also adopted findings, which provided in part:
4. At the hearing all protestants asked the Board to grant the relief sought on grounds relating to Property Tax Code Section 7-38-27(C) which provides, among other things, all protests shall be decided within 180 days of the date the protest is filed; the Board denies that the request, previously taken under advisement.
* * * * * *
6. As to land only: * * * (A) excess land on Plaza del Sol of 93,554 sq. ft. (B) excess land on Plaza Maya of 36,340 sq. ft. (C) vacant land of Roselea C DeBaca [sic] of 18,940 sq. ft.
7. As to land only: the Assessor applied a uniform unit value to all land in the downtown core area of $6.00 a square foot * * * and all vacant or excess land in the downtown core area is valued by the Bernalillo County Assessor at a unit value of $6.00 a square foot for the tax years 1983 and 1984.
* * * * * *

*1126 10. The subject improvements were valued by the County Assessor for both the tax years 1983 and 1984 as follows: * * * Plaza Del Sol * * * improvements * * * $2,813,706, and * * * Plaza Maya * * * improvements * * * $1,267,751.
* * * * * *
12. * * * [I]mprovements to the Plaza Del Sol and Plaza Maya properties * * were valued by the Assessor using manuals prepared by the State of New Mexico * * *.
13. The Assessor valued the subject improvements, on the Plaza del Sol property and the Plaza Maya property, pursuant to the market data approach to value, implemented by means of schedules and manuals approved by the State.
* * * * * *
15. The parties both presented evidence with regard to the valuation of * * improvements to the Plaza Del Sol property and the Plaza Maya property, based on 1975 market values, and the parties agreed that the other improvements in downtown Albuquerque * * * are valued by the Assessor for the tax years 1983 and 1984 based on 1975 market values.
16. In order to place a value on * * * improvements to the Plaza Del Sol property and the Plaza Maya property, both the Assessor and the taxpayer used a two-step process in which they determined the most probable unit sales price of the subject improvements and multiplied that figure by the number of square feet determined to be the area of the subject improvements * * *.
* * * * * *
19. * * * [T]he Board decided that the value of the subject improvements, for the tax years 1983 and 1984, is as follows: (A) * * * improvements to the Plaza Del Sol property  $1,732,500. (B) * * * Plaza Maya improvements  $963,171. [Emphasis in original.]
The Board's order directed that (1) for 1983 and 1984, the tax values of Plaza del Sol land remain unchanged at $561,324 and the tax value of Plaza del Sol improvements be lowered from $2,813,706 to $1,732,500 (total value: $2,293,824); (2) the valuation of Plaza Maya land continue unchanged at $218,040, and that of the Plaza Maya improvements be lowered from $1,267,751 to $963,171 (total value: $1,181,211); and (3) the tax value of the C. de Baca land for 1984 remain unchanged for a total value of $113,640.

I. CLAIM OF RES JUDICATA AND COLLATERAL ESTOPPEL
Taxpayers and the Board agree that the Property Tax Code, under NMSA 1978, Section 7-38-7 (Repl.Pamp. 1983), requires annual valuation of property for tax purposes. The parties also agree that since 1975, it has been the policy of the Bernalillo County Assessor to base annual assessments for annual property tax valuations upon 1975 market values. This policy is not mandated by any statutory requirement, but was adopted by Assessor following litigation arising out of the 1975 Bernalillo County reappraisal program. See Ernest W. Hahn, Inc. v. County Assessor for Bernalillo County, 92 N.M. 609, 592 P.2d 965 (1978). Robert Lane, Administrative Officer for the Bernalillo County Assessor, testified as to this policy decision:
The reappraisal of Bernalillo County was started in 1975 and approximately 40 percent of the County was reappraised. Following that, this sending of notices of value and the tax bills that year, suit was brought entitled Jaymen versus County of Bernalillo, George B. Beach, Assessor. Upon bringing of that suit there was quite a question as to whether or not the reappraisal would stand. So it was held in abeyance and no further action was taken until 1980.
* * * * * *
It was a policy decision of the then Bernalillo County Assessor, Jack Darling, that it would be unfair to 60 percent of the county to use an updated value for commercial properties since the appraisal started using the '75 manual.
*1127 Taxpayers argue that during a prior tax protest proceeding involving Plaza del Sol, Taxpayers and the Board agreed, under a Stipulation of Settlement, to land values of $163,720 and improvement values of $1,500,000 for the 1976 tax year. Taxpayers also assert that the same assessed values for the three subject parcels of land were continued by Assessor in 1980, 1981 and 1982 and that it was error not to use these valuations in 1983 and 1984. Assessor fixed both the 1981 and 1982 values for Plaza Maya at $107,929 for land and $559,625 for improvements. For the same two-year period, Assessor valued the unimproved C. de Baca land at $56,252.
Taxpayers contend that under the doctrines of res judicata and collateral estoppel, Assessor and the Board were bound to use the stipulated 1975 market values for the 1983 and 1984 tax years. Thus, Taxpayers assert that the 1976 Stipulation of Settlement correctly reflects 1975 market values for Plaza del Sol and that the 1981 and 1982 tax assessments correctly reflect 1975 market values for Plaza Maya and C. de Baca land.
Assessor states that the Stipulation of Settlement for the tax year 1976, in actuality, reflected only the 1966 property values for Plaza del Sol land and improvements. Hence, it is Assessor's contention that the Stipulation of Settlement is not res judicata and that Assessor is not collaterally estopped from imposing an updated tax assessment on Taxpayers' properties based on actual 1975 values.
Taxpayers' claims of collateral estoppel and res judicata have no application here. Estoppel, as a general rule, does not apply against the state. In re Ranchers-Tufco Limestone Project Joint Venture, 100 N.M. 632, 674 P.2d 522 (Ct.App.), cert. denied, 100 N.M. 505, 672 P.2d 1136 (1983). Moreover, as shown by the evidence, the 1976 tax assessment was not based upon 1975 or any subsequent property tax valuation. Finally, although the Stipulation of Settlement was binding for the year 1976, it does not preclude Assessor or the Board from redetermining the proper tax valuation for Taxpayers' property in subsequent years. By statute, all property subject to valuation for property taxation purposes is required to be valued each year. Section 7-38-7. A stipulation fixing property tax values for a specific year is not binding for any following tax year; it is res judicata only for the year in question. Property Tax Department v. Molycorp, Inc., 89 N.M. 603, 555 P.2d 903 (1976).

II. METHOD OF VALUATION
Taxpayers argue that the Board erred in not accepting fixed valuations for their properties based on the market values as determined by the sales of comparable property. Taxpayers also contend that the decision of the Board was based on evidence using the cost appraisal method. The Board modified Assessor's valuations of Plaza del Sol and Plaza Maya improvements, but sustained the tax values placed on Taxpayers' three parcels of land.
Both Taxpayers and Assessor agree that valuations for tax purposes are required to be based on evidence of comparable sales, unless evidence of comparable sales is unavailable. NMSA 1978, § 7-36-15 (Repl.Pamp. 1983). See also Landmark Ltd. v. Bernalillo County Assessor, 103 N.M. 65, 702 P.2d 1010 (Ct.App. 1985). Reviewing the evidence in the record, we find no indication that 1983 and 1984 valuations were based on current market values derived from actual consideration of specific comparable sales, or that, conversely, such evidence was unavailable.
The Assessor called David Romo and Ramona Nuzzo, appraisers, to present evidence as to the method of valuation used upon Taxpayers' properties. On cross-examination, Romo testified in part:

Q Mr. Romo * * * you * * * found certain changes [on Plaza Maya improvements] and lowered it by however much?
* * * * * *

A Yes. There was a difference in the amount of developed area in the building * * *. We had not previously *1128 made an actual inspection, and, therefore, it had been based on speculation anyway. I made an actual inspection * * * and I changed the improvements value to $1,087,879.
* * * * * *

Q And that would replace our previous assertion that the improvements for Plaza Maya should be what?

A That it was $1,267,751.

Q So the improvements of the Plaza Maya are to be valued at the 1,087,879?

A That's correct. [Emphasis added.]
In valuing Taxpayers' properties, Romo did not base his determination of value on evidence of other specifically identifiable and comparable market sales of properties similar to Taxpayers' tracts. Instead, Romo utilized formulas taken from a manual. Taxpayers challenged the propriety of this method and were overruled by the Board. On cross-examination, Romo testified as to his use of the 1975 manual in arriving at values:

A The calculations are almost exactly the same that were done in the past * * * except for some error which amounted to less than a hundred thousand dollars * * *.

Q But the same manual was used in '75 as it was used in every year up to the present?

A To determine the calculated figures, yes.

Q That's what I wanted to establish. Now, in reaching your values, when you went over it in 1982 to make this assessment, you did not go to the records and try to find sales of other buildings, did you?
A I used the manual to determine the valuation of this property.

Q So your answers is [sic], no, you didn't go to, say, Building A or B or X or Y or Z and see what it sold for?

A No, I didn't. [Emphasis added.]
The above testimony indicates that in arriving at valuations for the improvements on Plaza Maya and Plaza del Sol, the appraiser utilized formulas taken from a manual instead of personally selecting comparable market sales to arrive at an independent opinion of market value for each of the properties. Finding of Fact No. 12 adopted by the Board expressly determined that the Plaza del Sol and Plaza Maya improvements "were valued by the Assessor using the manuals prepared by the State of New Mexico * * *."
Both Assessor's appraisers, Romo and Nuzzo, testified that Assessor's office placed a value of $6 per square foot for land, exclusive of improvements, in the core area. Romo testified that he did not personally make an analysis or appraisal of the land value for Taxpayers' properties, and that he used figures calculated by others in his office. On cross-examination, Romo was asked if he knew how the figures contained in the manual were prepared:
Q * * * Do you know whether those values were restricted to New Mexico or * * * came from places other than the state * * *?
A I don't know.
Q And have you ever inquired as to where the values came from?
A I have not inquired from the [State Property Tax] division where they were derived from.
Nuzzo presented evidence of sales of other parcels of land, but conceded that she could not herself actually determine how the value of $6 per square foot was derived. On cross-examination, she stated:
Q According to the comparables you furnished us * * * seven [tracts] had buildings and four that were vacant land, is that correct?
A Yes.
Q What methods did you use to off set [sic] the value of the building?
A I really don't know that. I didn't do it at the time. * * *. I truly don't know.
*1129 In Four Hills Country Club v. Bernalillo County Property Tax Protest Board, 94 N.M. 709, 616 P.2d 422 (Ct.App. 1979), it was observed that the rule in this jurisdiction "has long been that experts must satisfactorily explain the steps followed in reaching a conclusion * * * and without such an explanation [and basis in the record,] the opinion is not competent evidence." Id. at 714, 616 P.2d at 427. See Galvan v. City of Albuquerque, 85 N.M. 42, 508 P.2d 1339 (Ct.App. 1973); see also NMSA 1978, Evid.R. 703 & Evid.R. 705 (Repl.Pamp. 1983). Market values cannot be established arbitrarily. In re Connecticut Mutual Life Insurance Co. v. Srogi, 101 A.D.2d 698, 475 N.Y.S.2d 672 (1984).
The Board modified the valuations of Assessor on Plaza del Sol improvements at $17.50 per square foot and on the Plaza Maya improvements at $15.51 per square foot. The findings of valuation of Taxpayers' properties adopted by the Board are not supported by evidence in the record indicating that the valuations of the Assessor or the Board were based upon market values after actual consideration of specific comparable sales. As observed in the text, A. Ring & J. Dasso, Real Estate Principles and Practices, at 495 (9th ed. 1981), determination of market value based on comparable sales necessarily involves four basic steps:
1. Selection of comparable sales[;]
2. Selection of units of comparison and making necessary computations and comparisons[;]
3. Analysis to determine differences between each comparable property and the subject property, and adjusting as appropriate[;]
4. Estimation of indicated market value of subject property * * *.
Section 7-36-15(B) provides in applicable part that unless a special method of valuation is authorized by statute:

The value of property for property taxation purposes shall be its market value as determined by sales of comparable property or, if that method cannot be used due to the lack of comparable sales data for the property being valued, then its value shall be determined using an income method or cost methods of valuation. In using any of the methods of valuation authorized by this subsection the valuation authority shall apply generally accepted appraisal techniques. [Emphasis added.]
The requirement of Section 7-36-15, necessitating valuation of property for tax purposes based upon the market value approach, is not satisfied by applying calculations derived from a text. If market value is not used as the basis for calculating assessed valuation, the assessor must explain why that approach was not appropriate, or that there is a lack of adequate market data. Section 7-36-15(B). See Peterson Properties, Del Rio Plaza Shopping Center v. Valencia County Valuation Protests Board, 89 N.M. 239, 549 P.2d 1074 (Ct.App. 1976); La Jara Land Developers, Inc. v. Bernalillo County Assessor, 97 N.M. 318, 639 P.2d 605 (Ct.App. 1982); see also Four Hills Country Club v. Bernalillo County Property Tax Protest Board. In Four Hills Country Club, the court expressly rejected the argument that it is "accepted appraisal technique" for an assessor testifying at trial to limit himself to reliance on another appraiser's report in determining property value. Id. 94 N.M. at 714, 616 P.2d at 427.
Valuations fixed by an assessor are presumed to be correct unless rebutted. NMSA 1978, § 7-38-6 (Repl.Pamp. 1983); Landmark Ltd. v. Bernalillo County Assessor. Taxpayers herein overcame the presumption that the assessments were correct; the Board modified the assessed valuations of Taxpayers' improvements. When the presumption of correctness is rebutted, the burden shifts to Assessor to show a correct valuation. Id.
A review board hearing a taxpayer's protest sits in a quasi-judicial capacity, and in arriving at a change of valuation, its decision must be based upon competent evidence. See Parker v. Kirkland, 298 Ill. App. 340, 18 N.E.2d 709 (1939); People *1130 ex rel. Glen Telephone Co. v. Hall, 130 A.D. 360, 114 N.Y.S. 511 (1909). Once an error is ascertained, the Board has the power to adjust or correct the valuation in order to equalize the taxpayer's assessment. State ex rel. Shriver v. Karr, 64 Neb. 514, 90 N.W. 298 (1902).
On appeal from the administrative decision of the Board, the evidence must be viewed in the light most favorable to support the findings, and the ruling will be reversed only if the evidence, together with all reasonable inferences to be drawn therefrom, cannot sustain the findings and decision. United Veterans Organization v. New Mexico Property Appraisal Department, 84 N.M. 114, 500 P.2d 199 (Ct. App. 1972). The Board's determination of property valuations is not supported by competent evidence; thus, its findings and decision cannot be sustained.
In view of our decision on this issue, it is not necessary to decide Taxpayers' claim on appeal that the assessments fixed by Assessor were excessive and discriminatory.

III. TIMELINESS OF HEARING
Taxpayers contend the Board is precluded from modifying the valuations previously placed upon their properties for tax purposes. We address this issue to ascertain if it is dispositive of Taxpayers' claim. Taxpayers contend that the Board should be precluded from valuing Taxpayers' properties at a value different from the one used by Assessor for the year immediately preceding the protests herein, because the Board failed to conduct a timely protest hearing, as required by NMSA 1978, Section 7-38-27 (Repl.Pamp. 1983). The latter statute provides in part:
B. Final action taken by the board on a petition shall be by written order signed by the chairman or a member of the board designated by the chairman. The order shall be made within thirty days after the date of the hearing, but this time limitation may be extended by agreement of the board and protestant * * *.
C. All protests shall be decided within one hundred eighty days of the date the protest is filed. [Emphasis added.]
Taxpayers filed their tax protests for Plaza del Sol and Plaza Maya for the tax year 1983 on February 4, 1983. Taxpayers filed their protests for all three parcels for the tax year 1984 on January 26, 1984. Taxpayers' protests to the 1983 and 1984 tax valuations were timely filed.
The Assessor scheduled the protest hearing on the 1983 tax valuations for February 28, 1984, and subsequently rescheduled the hearing for March 22, 1984. There is no indication in the record that any written notice of protest hearings was given in 1983, as required by NMSA 1978, Section 7-38-24 (Repl.Pamp. 1983). The initial hearing for Taxpayers' 1984 protest was set by the Board on August 28, 1984. Taxpayers admitted that they requested a continuance of the August 28, 1984 hearing. Thereafter, the protest hearings for Taxpayers' 1983 and 1984 tax protests were consolidated into a single hearing scheduled to be heard on September 13, 1984.
In addition to the statutory requirements governing the time for conducting protest hearings contained in Section 7-38-27(C), Property Tax Division Regulation 38-27:2(G) specifies that "a written order deciding the protest hearing will be made within thirty (30) days after the date of the hearing and that this time limitation cannot be extended except by agreement of the board and the protestant. In any event, the protest shall be decided within one hundred and eighty (180) days of the date the protest is filed."
At the beginning of the administrative hearing on September 13, 1984, Taxpayers moved to dismiss the protest hearing on the basis that the Assessor and Board had failed to schedule a timely protest hearing. The Board denied the request, indicating it would enter in the record documents from its file evidencing the basis for the delay. Assessor called a witness, Robert Lane, an employee of Assessor, to explain the reasons for the delay. Lane testified:

*1131 It is my recollection that this case had been set for hearing, and at the request of the protestant it was postponed. I do not have  my memory doesn't tell me exactly when and where, but I can get these records and I will do so at a later time, whenever there's a recess and I will get what I can out of the files.
The documentation was not added to the record. Assessor's attorney argued that the reasons for the delay were due to settlement negotiations between the parties and a request for postponement by Taxpayers. Taxpayers concede that there were ongoing settlement negotiations during the pendency of their protests. Taxpayers also admit that they requested a postponement of the hearing set for August 28, 1984, but they deny requesting other postponements. The testimony of Lane that the basis for delay in conducting the protest hearing was due to Taxpayers requests was not refuted by other evidence.
The provision contained in Section 7-38-27(C), requiring that all protests "shall be decided within one hundred eighty days of the date the protest is filed," is silent as to what result should be applied if the Board fails to comply with the statute.
Taxpayers contend that compliance with the time provisions of Section 7-38-27 was mandatory and that failure to comply with the 180-day hearing requirement should invalidate the 1983 tax valuation and require the use of the 1982 tax valuation for their three properties for 1983 and 1984. Taxpayers also assert that the word "shall" as contained in Section 7-38-27(C) makes compliance with the 180-day requirement mandatory. See Redman v. Board of Regents of New Mexico School for Visually Handicapped, 102 N.M. 234, 693 P.2d 1266 (Ct. App.), cert. denied, 102 N.M. 225, 693 P.2d 591 (1985).
A similar issue was raised in In re Ranchers-Tufco Limestone Project Joint Venture. There, this court recognized that "[t]he general rule is that tardiness of public officers in the performance of statutory duties is not a defense to an action by the state to enforce a public right or to protect public interests." 100 N.M. at 635, 674 P.2d at 525. The general rule is applicable herein. Ranchers-Tufco further observed that "[E]ven if the general rule did not apply, the taxpayers have not demonstrated that they have been harmed by the delay in deciding their protests." Id. at 635, 674 P.2d at 525.
Have Taxpayers been prejudiced by the delay in hearing and deciding their tax protests?
Taxpayers established that the protest hearing for the 1983 tax valuation was not held until September 13, 1984. We interpret Section 7-38-7 as a clear mandate that a protest hearing must be conducted within 180 days of the date the protest was filed and that the Board shall render a written decision within thirty days of the date of hearing, except where a taxpayer and the Board agree to extend this time. Where Taxpayers show that the statutory time constraints have not been complied with, the burden shifts to the Board to establish good cause for the delay. Cf. Redman v. Board of Regents of New Mexico School for the Visually Handicapped. Mere settlement negotiations, without more, are insufficient as a matter of law to toll statutory time requirements. E.g. Knippel v. Northern Communications, Inc., 97 N.M. 401, 640 P.2d 507 (Ct.App. 1982).
Taxpayers filed their protests to the 1984 tax valuations on January 26, 1984. The Board scheduled a hearing on the protest for August 28, 1984. Taxpayers admit that they requested a postponement of this hearing to September 13, 1984. Following the September 1984 hearing, the Board issued its written decision on October 12, 1984, within the thirty-day time requirement fixed by statute. Section 7-38-27(B).
In its order, the Board expressly directed that Assessor modify the 1983 and 1984 tax valuations to reflect the changes set forth in the order. Under the facts herein, the Board could properly determine that delay in conducting the protest hearings *1132 resulted from Taxpayers requests for postponement.
The case is reversed and remanded for rehearing of Taxpayers' protest in accordance with this opinion.
IT IS SO ORDERED.
ALARID and MINZNER, JJ., concur.