737 P.2d 555

**CIBOLA ENERGY CORPORATION, Appellant,**

v.

**Gemma O. ROSELLI, Valencia County Assessor, and the County of Valencia, New Mexico, Appellees.**

**No. 8641.**

Court of Appeals of New Mexico.

April 9, 1987.

Jonathan B. Sutin, Lewis R. Sutin, Sutin, Thayer & Browne, P.C., Albuquerque, for appellant.

Joseph T. Sprague, Albuquerque, for Valencia County Valuation Protests Bd.

Louis E. Valencia, Esquibel, Valencia, Sanchez & Griego, Los Lunas, for appellees.

## OPINION

GARCIA, Judge.

Appellant Cibola Energy Corporation (Cibola) filed a petition protesting valuations made by the Valencia County Assessor of land in Valencia County, for property taxation purposes. After the hearing, the Valencia County Protest Board (Board) entered an order fixing valuations and Cibola appeals from the portion of that order fixing values for units 6 and 8 in Tierra Grande. Cibola asserts there is insufficient evidence to support the Board's valuations and the decision and order are arbitrary and not in accordance with law. Because the county failed to rebut Cibola's showing on valuations, Cibola further requested that judgment be entered in favor of those valuations. We find Cibola's arguments persuasive.

### FACTS

The properties involved in this tax dispute have a checkered past. The last tax assessment on the properties occurred in 1972 when the lands were owned by Horizon Corporation. In its efforts to stimulate and promote land sales, Horizon prepared slick, colorful brochures picturing the vacant land as a virtual utopia. Modern shopping centers, schools, commercial, industrial and residential districts were depicted. Horizon filed subdivision plats with the county, but the land itself remained undeveloped.

The county's initial assessment was based on the intended uses of the property contained in Horizon's brochure: single-family residential, multi-family, industrial and commercial. There were no county zoning restrictions applicable to these properties. Nevertheless, the assessor's valuations, based on Horizon's own use designations, resulted in certain units of property

being assessed at greater values than others.

The shopping malls, schools, commercial and residential development never materialized. For the most part, the land in question remained barren and undeveloped. In 1981, the Federal Trade Commission issued a cease and desist order against Horizon, prohibiting it from engaging in various sales practices. This effectively brought an end to land sales. After a series of complicated agreements, loans, foreclosures and auctions, Cibola, a gas and exploration company, came to own the lands in question.

In 1984, Cibola filed a formal protest of the county assessor's valuations of lands owned by Cibola in Valencia County. The lands which were the subject of the protest were vacant lands east of Belen and consisting of two parcels; one of approximately 70 acres and the other approximately 3,650 acres.

The Board's valuations of Cibola's lands were that approximately 3,400 acres should be valued at $600 per acre and certain lands abutting the railroad of $400 per acre.

**DISCUSSION**

**ISSUE I**

Under NMSA 1978, Section 7–38–28(D) (Repl.1986), the decision of a County Valuation Protest Board is to be set aside if it is:

(1) arbitrary, capricious or an abuse of discretion;

(2) not supported by substantial evidence in the record taken as a whole; or

(3) otherwise not in accordance with law.

Judicial review of decisions by our agencies are based on the whole record. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 681 P.2d 717 (1984). This requires the courts to review and consider not only evidence in support of one party's contention, but also to look at evidence which is contrary to the finding; the reviewing court must than decide whether, *on balance*, the agency's decision was supported by substantial evidence. *Trujillo v. Employment Sec. Dep't*, 105 N.M. 467, 734 P.2d 245 (App.

1987). "Substantial evidence in an administrative agency review requires whole record review, not a review limited to those findings most favorable to the agency order." *Id.*, at 470, 734 P.2d at 248 (quoting *Groendyke Transport, Inc. v. New Mexico State Corp. Comm'n*, 101 N.M. 470, 477, 684 P.2d 1135, 1142 (1984)). *See also Trujillo v. Employment Sec. Dep't.*

As Professor Louis Jaffe recognized in his definitive commentary on the issue of whole record review, the role of the judge is not that of a machine or "automaton."

[I]f [a judge] is to apply his conscience to the whole record, then all the elements of the record that would move a man's conscience are relevant. It would seem that the purpose of the "whole record" test is to limit the opportunity for transmuting a preconception into judgment by picking and choosing what will support that preconception and wilfully ignoring whatever weighs against it.

Jaffe, *Judicial Review: "Substantial Evidence on the Whole Record"*, 64 Harv.L. Rev. 1233, 1241 (1951).

We do not reweigh the evidence to the extent that the reviewing court may reach a contrary result from that of the administrative agency when that agency's decision is supported by substantial evidence, but where the evidence as a whole does not support the decision, the reviewing court may reverse. In this case, we hold that the Board's decision is not supported by the record.

NMSA 1978, Section 7–38–6 (Repl.1986) provides in part: "Values of property for property taxation purposes determined by the * * * county assessor are presumed to be correct." This statute places the burden on the taxpayer to overcome the presumption of correctness. However, the burden shifts to the county assessor to show a correct valuation once that burden of correctness is overcome. *Bakel v. Bernalillo County Assessor*, 95 N.M. 723, 625 P.2d 1240 (Ct.App.1980). We turn to the taxpayer's evidence to determine whether the statutory presumption is overcome.

Prior to the protest, the assessor's valuation of Cibola's property was based on the plats submitted to the county by Horizon Corporation. As previously noted, these plats were no more than predictions that never came to pass. The assessor herself admitted that the valuations were incorrect. She could offer no explanation of the values placed on the lots. The county's sole expert witness also testified that the assessor's valuations were inconsistent, unequal, not uniform and without logical pattern. Based on the evidence presented, the county was forced to concede, on appeal, that Cibola carried its burden. The county states "[t]he taxpayer obviously overcame the legal presumption of Section 7–30–6, N.M.S.A. 1978, in favor of the valuations placed on its property by the Assessor."

With the concession that the initial assessment was incorrect, we turn to the record to determine whether the county was able to overcome Cibola's showing. The assessor put on one expert witness in rebuttal who had re-evaluated the property. His re-evaluation, however, did not take into account access to roads, access to utilities, locations, buyer motivations or other variables. It also did not take into account the history of the rural communities, the dramatic changes in the development and development plans or the FTC proceedings. Moreover, the valuation was based on 1980 rather than on 1984, contrary to statute. NMSA 1978, § 7–38–7 (Repl.1986) (property is to be valued as of January 1 of each tax year). Nonetheless, his valuations were still 60% lower than the assessor's. The county's expert could only claim his assessment was 79% accurate. Cibola's expert determined the re-evaluation was only 56% accurate.

The parties also disputed the best use of the land. The properties involved were vacant and many were leased for grazing purposes. The county's expert agreed that the highest and best use of the property is its present use, until such time as development occurs, and that the highest and best *future* use of the property was that of speculative land. Again, the county's expert seems to base this opinion on the plats from Horizon Corporation. This is shaky ground. Additionally, in this same vein, all of Cibola's experts agreed that the failure by the county's expert to consider the location of the land, access to utilities and the like rendered his analysis not credible and unreliable.

■ The Board determined that the tax assessor's valuations were too high and that Cibola's valuations were too low. We cannot agree, however, that the Board's valuations were "just right." Once the assessor's valuation of the property was rebutted by Cibola, the burden shifted to the assessor to show a correct valuation. *See Plaza Del Sol Ltd. Partnership v. Bernalillo County Assessor,* 104 N.M. 154, 717 P.2d 1123 (Ct.App.1986); *Bakel v. Bernalillo County Assessor.*

■ In its order, the Board determined that the property was vacant land, not oil and gas property, not mineral property, not residential property, not grazing land and not entitled to a developer discount. While the Board concluded "that there was sufficient evidence of the comparable sales data presented at the hearing to determine the value of the property," we can find nothing in the record to indicate how or why the Board arrived at the valuations it did. It appears that the Board chose valuations in between those offered by Cibola and the assessor's expert as a compromise. This was not appropriate. Although, "[o]nce an error is ascertained, the Board has the power to adjust or correct the valuation in order to equalize the taxpayer's assessment", *Plaza Del Sol Ltd.,* 104 N.M. at 161, 717 P.2d at 1130, "its decision must be based upon competent evidence." *Id.* at 160, 717 P.2d at 1129. A valuation may not be placed on property arbitrarily. Thus, we think it clear from the above that the Board's decision had no sound basis.

## ISSUE II

■ Cibola further argues that since it rebutted the presumption of correctness of the assessor's valuations, judgment should be entered in favor of its own valuations. Since the whole record review standard allows "independent findings by the review-

ing court reaching a contrary result from that of the administrative agency * * * where the decision of the administrative agency is not supported by substantial evidence * * *." *Trujillo*, at 470, 734 P.2d at 248, we agree. *See also Alonzo v. New Mexico Employment Sec. Dep't*, 101 N.M. 770, 689 P.2d 286 (1984). The county's expert testified that the assessor's valuations were inconsistent, unequal, not uniform and without logical pattern; he could not "find that much to argue with" in Cibola's valuation. Cibola did a direct comparison of bulk acreage sales appraisals with a bulk acreage premise. This method of valuation is a generally accepted appraisal technique. *Cf. First National Bank v. Bernalillo County Valuation Protest Bd.*, 90 N.M. 110, 560 P.2d 174 (Ct.App.1977). Cibola's valuation is supported by the whole record in that after rebutting the assessor's valuation and presenting a prima facie case for its own valuation, the Board failed to rebut Cibola's appraisal. *See Bakel v. Bernalillo County Assessor; First National Bank v. Bernalillo County Valuation Protest Bd.* Thus, we reverse the decision of the Board and remand with instructions that the Board enter judgment for Cibola in favor of its valuations.

■ Finally, as an aside, we address Cibola's complaint regarding the Board's refusal to enter findings of fact and conclusions of law. In failing to make findings of fact and conclusions of law, the Board noted that it "recognize[d] the great expense to the parties which would be incurred to submit same and the Board has not asked the parties to do so." We are not impressed with this reasoning. In fact, Cibola did submit requested findings of fact and conclusions of law to the Board that were evidently ignored. As this court noted in *First National Bank*, 90 N.M. at 115, 560 P.2d 174 (quoting Davis, Administrative Law Treatise, § 16.05 at 444 (1958)):

> The practical reasons for requiring *administrative findings* are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, *irrespective of a statutory requirement*. The rea-

sons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdictions. (Emphasis added.)

Although in this case, from our review of the entire record, we are able to make a determination regarding the Board's findings, this may not always be the case. "For purposes of judicial review, the order must, at least, indicate the reasoning of the board and the basis on which it acted." *Id.* We cannot help but think that the expense incurred by having findings of fact and conclusions of law would be repaid ten-fold by the expense and energy saved on judicial reviews.

In sum, under the standard of whole record review, we find the Board's order to be arbitrary and unsupported by substantial evidence. We reverse the Board's order and remand so that judgment may be entered in favor of Cibola's valuations of the property. Cibola's valuations are supported by competent evidence on the record as a whole.

IT IS SO ORDERED.

DONNELLY, C.J., and APODACA, J., concur.