869 P.2d 829

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**
Plaintiff–Appellant,

v.

**Ray Charles WHITENER,**
Defendant–Appellee.

No. 13092.

Court of Appeals of New Mexico.

Dec. 21, 1993.

Certiorari Granted Feb. 9, 1994.

Tom Udall, Atty. Gen., Margaret B. Alcock, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Carmen E. Garza, Las Cruces, for defendant-appellee.

Randi McGinn, New Mexico Defense Lawyers Ass'n, Albuquerque, for amicus curiae.

## OPINION

CHAVEZ, Judge.

The New Mexico Taxation and Revenue Department (the Department) appeals the decision and order of its hearing officer which granted Ray Charles Whitener's (Defendant's) protest to taxes imposed upon him under the Controlled Substance Tax Act (the Act), NMSA 1978, Sections 7–18A–1 to –18A–7 (Repl.Pamp.1993). The hearing officer found and concluded that the tax violated Defendant's right against double jeopardy. This case presents the Court with the issue of the constitutionality of the Act as applied to Defendant. We affirm.

### FACTS

In January 1990, Defendant was stopped by the New Mexico state police in Bernalillo County. Twenty-five pounds of marijuana were discovered in the trunk of Defendant's automobile. In addition to the drugs, police uncovered two firearms and $37,265 in cash.

Defendant was arrested and charged with possession of a controlled substance with intent to distribute, a fourth degree felony. In June 1990, pursuant to a plea agreement, Defendant was convicted of that offense. His sentence was deferred for eighteen months and he was placed on supervised probation. In addition to the standard conditions of probation, Defendant was required to pay a $75 laboratory fee, perform 100 hours of community service, and pay $15 per month in probation costs.

In February 1990, the State, through the Department of Public Safety, filed an amended complaint seeking the forfeiture of the firearms and cash seized from Defendant. In August 1990, the State and Defendant entered into a stipulated judgment in which Defendant forfeited the firearms and $33,365 in cash.

Prior to that, in March 1990, the Department levied an assessment against Defendant totalling $80,070.38, which represented the tax, penalty, and interest under the Act. In April 1990, Defendant timely filed a protest to the assessment. See NMSA 1978, § 7–1–24 (Repl.Pamp.1990).

In December 1990, a hearing was held on Defendant's protest before Gerald Richardson, Hearing Officer for the Department. At the hearing, the parties stipulated that the tax assessment arose from the same set of facts and circumstances that triggered Defendant's conviction of possession of marijuana and the forfeiture of his property. Defendant argued at the hearing that the controlled substance tax was in fact a second punishment against him and, therefore, violated his right against double jeopardy. He further argued at the hearing that the tax bore no reasonable relationship to any State interest, and that the State had an obligation to prove that such a relationship existed. In response, the Department argued that the burden was on Defendant, not the State, to come forward and prove the invalidity of the tax. The Department argued that there was no double jeopardy violation, and it was acting within its authority to assess such a tax. No evidence was presented at the hearing regarding the value of the marijuana on which the tax was based or the State's costs in apprehending and prosecuting Defendant. The hearing officer had the parties submit briefs on the issue.

Thereafter, the hearing officer entered its decision and order. The decision noted that tax assessments are presumed to be correct, and, therefore, Defendant bore the burden of proof with respect to the amount of marijuana seized and the proper amount of tax liability. It was determined that Defendant failed to meet this burden. However, the decision stated that the remaining issue to be determined was whether, under the particular circumstances, the tax imposed constituted a second punishment in violation of the double jeopardy clause. It further noted that a review of the Act failed to reveal that the taxes were used to offset any particularized costs incurred with respect to drug enforcement or the societal costs of drug abuse, and instead the monies went to the State's general fund. The decision provided that, despite Defendant's failure to present evidence on the street value of marijuana, the $200 per ounce tax appeared "to at least equal, if not

far exceed this decision maker's impression of the street value of marijuana." The hearing officer determined that, under the facts of this case, the drug tax constituted an additional punishment which bore no rational relationship to the goal of compensating the State for its costs. Having found a violation of double jeopardy, the hearing officer granted Defendant's protest. The Department appealed from that decision and order.

## DISCUSSION AND ANALYSIS

■ The Double Jeopardy Clause, *see* U.S. Const. amend. V; N.M. Const. art. II, § 15, embodies three protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See State v. Trevino*, 113 N.M. 804, 808, 833 P.2d 1170, 1174 (Ct.App.1991), *aff'd*, 113 N.M. 780, 833 P.2d 1146 (1992). It is the third of these protections which is at issue in this appeal.

The Act provides authority for the Department to levy a tax on the unlawful possession of controlled substances at certain rates depending on the amount of drugs involved. *See* § 7–18A–3(A). The Department is also charged with interpreting the Act and administering and enforcing the collection of taxes levied on controlled substances. *See* § 7–18A–5(A) & (B).

■ Tax assessments or demands for payment are presumed to be correct. NMSA 1978, § 7–1–17(C) (Repl.Pamp.1993). Therefore, Defendant bore the burden of overcoming this presumption of correctness. *See Archuleta v. O'Cheskey*, 84 N.M. 428, 431, 504 P.2d 638, 641 (Ct.App.1972). Once the presumption is rebutted, the burden shifts to the State to show the correctness of the assessed tax. *See Cibola Energy Corp. v. Roselli*, 105 N.M. 774, 777, 737 P.2d 555, 558 (Ct.App.1987).

The United States Supreme Court has dealt with the issue of whether state action, which is civil in nature, can nonetheless be violative of double jeopardy. In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court held that a defendant who had already been punished criminally may not be subjected to an additional civil sanction to the extent that the second sanction may not be fairly characterized as remedial but only as a deterrent or retribution. Halper had been criminally convicted of submitting $585 in false Medicare claims for reimbursement, was sentenced to two years in prison, and was fined $5,000. *Id.* at 437, 109 S.Ct. at 1896. Thereafter, the federal government instituted a civil action against him for submitting false claims and assessed a fine against him totalling $130,000. *Id.* at 438, 109 S.Ct. at 1896.

In reaching its decision, the Supreme Court noted that with respect to assessments, the labels "criminal" and "civil" were not of paramount importance and could not be utilized to defeat the applicable protections of constitutional law. *Id.* at 447–48, 109 S.Ct. at 1901–02. It further noted that the determination of whether a given civil sanction constituted punishment required a particularized assessment of the penalty imposed and the purposes that the penalty may be fairly said to serve. *Id.* at 448, 109 S.Ct. at 1902. With that in mind, the Court stated that for situations in which a fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages the offender has caused, the offender is entitled to an accounting of the state's damages and costs to determine if the penalty sought in fact constitutes a second punishment. *Id.* at 449–50, 109 S.Ct. at 1902–03. Furthermore, the Court noted that the only proscription established by its ruling was that the state may not criminally prosecute a defendant, impose a criminal penalty upon the defendant, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to making the state whole. *Id.* at 451, 109 S.Ct. at 1903.

In *Halper*, the trial court found a tremendous disparity between the government's actual damages and the civil penalty authorized by statute. *Id.* at 452, 109 S.Ct. at 1903. The government did not challenge the trial court's approximation of its costs. Nonetheless, on appeal, the Court vacated the judgment below and remanded the case to allow

the government to demonstrate that the trial court's assessment of its injuries was erroneous. *Id.* Since the government chose below to litigate only the legal issue decided in *Halper,* the Court thought it unfair to deprive the government of an opportunity to present the trial court with an accounting of its actual costs arising from the Medicare fraud. *Id.*

The analysis in *Halper* has specifically been utilized to strike down a state-imposed controlled-substance tax on the grounds that it was unconstitutional as applied. In *In re Kurth Ranch,* 986 F.2d 1308 (9th Cir.), *cert. granted,* — U.S. —, 114 S.Ct. 38, 125 L.Ed.2d 788 (1993), defendants pled guilty to various drug-related offenses based on the cultivation of marijuana on their family farm. Thereafter, the state assessed a drug tax totalling close to $865,000. *Id.* at 1310. Defendants filed bankruptcy, and in those proceedings, the bankruptcy court denied the state's claim for drug tax revenue. The district court affirmed that denial and the state appealed. *Id.*

In affirming the district court, and applying an analysis similar to that in *Halper,* the circuit court noted that the fact that the drug assessment was labeled a "tax" was not, in and of itself, dispositive of the issue of whether its imposition constituted an impermissible second punishment. *Id.* The court stated that since the case involved a previous criminal conviction, the most relevant consideration was the character of the sanction and whether it could fairly be called punitive in nature. It further stated that if the additional civil sanction appeared sufficiently disproportionate to the remedial goals claimed by the state, defendants were entitled to an accounting to determine whether the sanction constituted an impermissible additional punishment. *Id.* at 1311. The record in *Kurth Ranch* was devoid of the information necessary to perform such a proportionality analysis, and the state refused to make such a showing, despite being given opportunities to do so. In light of that refusal, the court stated that without any showing of some rough approximation of its actual damages and costs, allowing the state to impose the tax would be sanctioning a penalty which

*Halper* prohibits. *Id.* at 1312. In reaching its conclusion that the Montana drug tax was unconstitutional as applied to the case, the appellate court concluded that by refusing to offer any evidence to justify the tax assessment, the state failed to meet the threshold requirements under *Halper.* *Id.*

 Turning to the facts of this case, we find persuasive the analysis in *Kurth Ranch* which looks to the application of the assessment in the particular case in order to determine whether its effect can be called punitive in nature and, therefore, violative of the prohibition against double jeopardy as applied here. We do not find the fact that the assessment levied here was labeled a "tax" to be dispositive on the double jeopardy issue. *See Halper,* 490 U.S. at 447–48, 109 S.Ct. at 1901–02; *Kurth Ranch,* 986 F.2d at 1310–11 (labels not of paramount importance and cannot be utilized to defeat the applicable protections of constitutional law). The State cannot restrict an individual's constitutional rights by statute. *See State v. Barber,* 108 N.M. 709, 710–11, 778 P.2d 456, 457–58 (Ct. App.) (legislature, by statute, may not diminish a right expressly provided by the constitution), *cert. denied,* 108 N.M. 713, 778 P.2d 911 (1989).

 Our review of the record leads us to conclude that Defendant met his burden of proof, regarding the invalidity of the assessment, by making a prima facie showing that it violated his right against double jeopardy. *See Archuleta,* 84 N.M. at 431, 504 P.2d at 641. Specifically, Defendant showed how he had previously been convicted of a drug offense involving the same controlled substances that formed the basis of the assessment. Defendant showed that notwithstanding the fact that he had already been criminally punished, the State also sought to impose a significant drug tax. Because Defendant entered into a plea agreement with the State, one may rest assured that the State did not incur the significant expense for criminal prosecutions which involve a trial and the related preparation and investigation costs. Also, in addition to the criminal prosecution and resulting fees imposed on Defendant, the State received over $33,000 in the forfeiture proceedings. *See Austin v. United*

*States,* —— U.S. ——, —— n. 4, 113 S.Ct. 2801, 2805 n. 4, 125 L.Ed.2d 488 (1993) ("The Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings, but only in cases where the forfeiture could properly be characterized as remedial."); *see also United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993).

Based on these facts, Defendant met his burden to show the invalidity of the assessment, and therefore, the Department was required to present evidence showing otherwise. *See Cibola Energy Corp.,* 105 N.M. at 777, 737 P.2d at 558. Since Defendant made a prima facie case regarding how the tax was violative of his double jeopardy right, the State was not excused from introducing evidence regarding the costs it incurred merely because the assessment is part of the legislative scheme to raise money for the general fund. *See Barber,* 108 N.M. at 710–11, 778 P.2d at 457–58.

As did the Supreme Court in *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902, and the court in *Kurth Ranch,* 986 F.2d at 1311, we deem it important to note that this case involves the special considerations that come into play when there is a previous criminal conviction. For this reason, the arguments made by the Department and the cases on which they rely and some of the cases on which the dissent relies, which solely involve tax proceedings and do not involve previous criminal convictions, are not persuasive. We do not decide the question of whether the State may seek both civil and criminal penalties in one proceeding. In a single proceeding, the multiple punishment issue is one of legislative intent. *Halper,* 490 U.S. at 450, 109 S.Ct. at 1902. Nor do we consider the proceedings in this case, which were begun at different times and in which the tax hearing was conducted after the criminal and forfeiture proceedings were concluded, to be simultaneous or concurrent proceedings. *See U.S. v. Millan,* 2 F.3d 17 (2d Cir.1993).

The relevant inquiry, with respect to the issue of the constitutionality of the tax as applied to Defendant, is whether the assessment was proportionate to the remedial goals claimed by the State. *See Kurth Ranch,* 986 F.2d at 1311. As in *Kurth Ranch,* the record in this case is devoid of information necessary to make a determination of proportionality. *See id.* at 1312. Because the Department was aware that Defendant was relying on *Halper* and was aware that the lower court in *Kurth Ranch* had ruled in favor of the taxpayer, the Department should have known that it needed to make some showing of proportionality that would satisfy its burden under *Halper.* It did not, instead relying on cases involving an analysis of taxes alone to determine whether they are penalties rather than on the appropriate *Halper* analysis, which considers those cases in which there is a prior criminal penalty and in which the Court specifically held that a defendant is entitled to an accounting. *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902. Because the Department did not provide that accounting, despite being on notice that the accounting was necessary, we affirm the decision of the hearing officer. In this connection, we note that much of the analysis in the dissent could equally have been done in *Halper* and have called for a different result in that case. Because it was not done there and because *Halper* arrived at the result it did, we believe the same result is appropriate here.

Defendant is awarded $2,500 as reasonable attorney fees for the defense of this appeal. *See* NMSA 1978, § 7–1–25(D) (Repl. Pamp.1993).

**IT IS SO ORDERED.**

PICKARD, J., concur.

HARTZ, J., dissents.

HARTZ, Judge (dissenting).

I respectfully dissent. Although much of the majority opinion finds support in the Supreme Court's language in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), this case appears to be distinguishable from *Halper* in two important respects. First, the full amount of the tax could rationally be justified on grounds other than punishment of Whitener. Second, because the criminal prosecution and the tax collection were pursued concurrently, the tax collection is probably not a subsequent prose-

cution for the purposes of double-jeopardy doctrine.

The novel questions raised by this appeal will probably be decided by the United States Supreme Court in the next few months. In October the Supreme Court granted certiorari in *In re Kurth Ranch*, 986 F.2d 1308 (9th Cir.1993), whose facts appear to be indistinguishable in any material respect from those in this appeal. Perhaps the parties to this appeal could have advanced their positions better by filing amicus briefs in *Kurth* than by persuading this panel of their views. Nevertheless, it is not this Court's practice to await decisions of the United States Supreme Court. Therefore, I shall explain why I disagree with the majority opinion.

## I. Is the Imposition of the Tax a Punishment?

The tax at issue is levied at the rate of $200 per ounce of marijuana. NMSA 1978, § 7–18A–3(A)(5) (Repl.Pamp.1993). How much, if any, of the tax constitutes punishment? As I understand *Halper*, the punishment portion is that part of the tax which is left over after all other proper purposes of the tax are accounted for.

In *Halper* the punishment resulted from imposition of a civil penalty. The civil penalty was to be considered punishment if it could not "fairly be said solely to serve a remedial purpose." *Id.,* 490 U.S. at 448, 109 S.Ct. at 1902. The remedial purpose need not be served with precision. The Court allowed for "an element of rough justice" in determining whether a remedial purpose was satisfied. *Id.* at 449, 109 S.Ct. at 1902.

To apply *Halper* one must first determine what purposes *Halper* considered to be remedial. In general, one can say that obtaining compensation for the government's injuries is a remedial purpose. Thus, in disposing of the specific case before it, *Halper* held that the government should not be bound by the trial court's approximation of its expenses and remanded the matter to the trial court "to permit the Government to demonstrate that the District Court's assessment of its injuries was erroneous." *Id.* at 452, 109 S.Ct. at 1903.

The government's injuries include at a minimum whatever the defendant took from the government, together with the governmental costs of recovery. This conclusion follows from *Halper's* discussion of *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). Reaffirming the holding in *Hess* that the civil penalty for collusive bidding on government contracts did not constitute a second punishment, *Halper* stated, "Those injuries [done to the government], of course, included not merely the amount of the fraud itself, but also ancillary costs, such as the costs of detection and investigation, that routinely attend the Government's efforts to root out deceptive practices directed at the public purse." *Halper,* 490 U.S. at 445, 109 S.Ct. at 1900.

*Halper* also suggested further costs that can be taken into account when it approved the Court's earlier decision in *Rex Trailer Co. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956). The defendants in that case had fraudulently purchased government trucks by claiming veteran priority rights to which they were not entitled. *Halper* noted that *Rex Trailer* recognized that the government sustained injury "due to the resultant decrease of motor vehicles available to Government agencies, an increase in undesirable speculation, and damage to its program of promoting bona fide sales to veterans." *Halper,* 490 U.S. at 445–46, 109 S.Ct. at 1900. If civil payments can be deemed remedial to the extent that they reimburse the government for losses such as those noted in *Rex Trailer,* it would seem to follow that one could also consider as a remedial purpose the reimbursement of the governmental costs associated with social ills caused by marijuana. After all, high taxes on alcohol and tobacco products are often justified (even by the President of the United States) by the governmental costs caused by use and abuse of those substances. In addition to any costs caused by the use of marijuana, the criminal conduct of trafficking imposes its own costs.

Language in the Supreme Court's recent decision in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993),

supports this broad view of the remedial purposes that can be considered in determining whether a civil imposition is punitive. One reason *Austin* gave for finding an in rem forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7) to be punitive (for purposes of the Excessive Fines Clause of the Eighth Amendment) was that "the 'forfeiture of property ... ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law.'" *Id.,* 113 S.Ct. at 2812 (quoting *United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980)). The Court could say with confidence that there was no correlation because a vehicle or parcel of real property would be forfeitable no matter what its value and no matter how small the amount of drugs involved. A forfeiture that was proportionate to the quantity of drugs seized might be adequately correlated. More significantly for the purposes of this case, *Austin* implies that a civil imposition that compensates for "damages sustained by society" is not punitive. Thus, although *Austin* was addressing only forfeitures, the opinion suggests that a civil imposition could be fully justified as remedial if the amount of the imposition is comparable to the social harm caused by the activity that is the subject of the imposition.

If the above analysis is correct, then the $200–per–ounce tax is remedial to the extent that it reimburses the state for (1) the costs of investigating, prosecuting, and punishing marijuana offenses (which would include the costs of incarceration and probation), and (2) the costs arising from the social ills created by the use of marijuana and criminal trafficking in marijuana. The majority opinion errs by focusing only on the costs of prosecuting Defendant, which admittedly were minimal because of the plea bargain. The opinion ignores investigative costs. Those costs should include not only the pay of the investigating officers for the time they spent on Defendant's case, but also a proportionate share of such "overhead" costs as the cost of training the officers and the cost of maintaining a scientific laboratory to verify the chemical composition of questioned substances.

The majority opinion also ignores the social costs arising from the use and trafficking of marijuana. I realize that there are informed, intelligent people who believe that those costs are small. But reasonable minds can differ on that matter and courtroom procedures are not well-suited for determining the effects on society of the use of marijuana. When the constitutionality of legislation depends on such legislative facts, *see Trujillo v. City of Albuquerque,* 110 N.M. 621, 634–37, 798 P.2d 571, 584–87 (1990) (Montgomery, J., concurring in part and dissenting in part) (discussing "legislative facts"), the presumption of constitutionality, *see State v. Segotta,* 100 N.M. 498, 500, 672 P.2d 1129, 1131 (1983), properly imposes the burden of persuasion on those challenging constitutionality. Thus, the taxpayer must establish that the tax does not "fairly serve" proper nonpunishment purposes. *Halper* reached essentially the same conclusion when it held that the government is not required to provide an accounting of its damages and costs unless the civil penalty "bears no rational relation to the goal of compensating the Government for its loss." 490 U.S. at 449, 109 S.Ct. at 1902. In the present case Defendant has failed to show that the tax rate imposed is not rationally related to the costs imposed upon the state. *See Rehg. v. Illinois Dep't of Revenue,* 152 Ill.2d 504, 178 Ill.Dec. 731, 734, 743, 605 N.E.2d 525, 528, 537 (1992) (Tax penalty of $168,000 imposed on $300 worth of stolen prescription drugs "appears to bear a rational relationship to the goal of compensating the State for the costs typically incurred in investigating and prosecuting that *type* of conduct.").

Moreover, the present case is not totally controlled by *Halper* because *Halper* considered a civil penalty whereas Defendant is here challenging a tax. It is not clear to me that the only difference between a tax and a civil penalty is the purely formal one of the label attached to the imposition. Because *Halper* was addressing a civil penalty, the Supreme Court could start from the assumption that the sole non-punishment purpose of the imposition was a remedial one. That assumption appears incorrect, however, when the imposition is a tax. Taxes need not be justified by the damage to the government

caused by the taxpayer. Nor need the tax be justified by the amount of benefit conferred. *See State ex rel. Angel Fire Home & Land Owners Ass'n v. South Cent. Colfax County Special Hosp. Dist.,* 110 N.M. 496, 498–500, 797 P.2d 285, 287–89 (Ct.App.), *cert. denied,* 110 N.M. 330, 795 P.2d 1022 (1990). "A tax is not an assessment of benefits.... The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes." *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 522, 57 S.Ct. 868, 878, 81 L.Ed. 1245 (1937). A tax can be justified on the ground that the legislature finds it to be an equitable way of apportioning the costs of government.

In discussing a federal tax on conducting a liquor business contrary to state law, Justice Cardozo wrote:

> Congress may have held the view that an excise should be so distributed as to work a minimum of hardship; that an illegal and furtive business, irrespective of the wrongdoing of its proprietor, is a breeder of crimes and a refuge of criminals; and that in any wisely ordered polity, in any sound system of taxation, men engaged in such a calling will be made to contribute more heavily to the necessities of the Treasury than men engaged in a calling that is beneficent and lawful.

> ... Congress is not punishing for a crime against another government. It is not punishing at all. It is laying an excise upon a business conducted in a particular way with notice to the taxpayer that if he embarks upon that business he will be subjected to a special burden. What he pays, if he chooses to go on, is a tax and not a penalty.

*United States v. Constantine,* 296 U.S. 287, 297–98, 56 S.Ct. 223, 228, 80 L.Ed. 233 (1935) (Cardozo, J., dissenting). *Cf. United States v. Sanchez,* 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950) (upholding federal marihuana tax). Although these remarks were written in dissent, they were joined by two other giants of the United States Supreme Court,

Justices Brandeis and Stone. Their view may well carry the day today.

I realize that it should not be possible for a legislature to avoid the Double Jeopardy Clause by simply calling a civil penalty a tax. Nevertheless, the recognition that taxes serve purposes other than punishment and compensation to the government for loss certainly complicates the task of determining whether a tax should be considered punishment. To the extent that a tax on marijuana can be viewed as simply an equitable way of apportioning the burden of taxation to support New Mexico government, the tax is not punishment. This observation reinforces the earlier conclusion that Defendant had a heavy burden to establish that the tax in this case constituted punishment.

One final comment regarding whether the tax in this case served a remedial purpose. The majority opinion seems to suggest that the forfeiture had already reimbursed all, or at least a part, of the state's costs, thereby rendering the tax that much more a punishment. I do not agree that the forfeiture recovery should be considered in assessing the extent to which the tax constituted punishment. After all, the forfeiture, which was not challenged by Defendant, may itself have been punitive. A few months ago the United States Supreme Court stated, with apparent unanimity, that an in personam forfeiture "is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine.'" *Alexander v. United States,* — U.S. —, — - —, 113 S.Ct. 2766, 2775–76, 125 L.Ed.2d 441 (1993), *accord Austin v. United States,* — U.S. —, — - —, 113 S.Ct. 2801, 2811–12, 125 L.Ed.2d 488 (1993) (also finding an in rem forfeiture to be punishment for Eighth Amendment purposes). When a fine is imposed as part of a defendant's punishment, it would be improper to calculate that the fine compensated the government for its costs and then rule that the civil penalty did not serve a purely remedial purpose and therefore constituted improper punishment. The net result would be to deny the government its authority to impose the financial punishment. Likewise, when a forfeiture serves the purpose of a traditional fine, the extent to which the forfeiture could be said to compen-

sate the state for its costs should not be considered in determining whether a later civil imposition—such as a civil penalty or a tax—constituted a punishment. Considering the forfeiture for that purpose results in negating the forfeiture as punishment. The State should be able to collect money for non-punishment purposes and also impose punishment (by forfeiture) on top of that amount.

## II. Was Imposition of the Tax a Subsequent Punishment?

The majority state that they do not "decide the question of whether the State may seek both civil and criminal penalties in one proceeding." This statement follows *Halper*, which said that the decision did not "prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." *Halper*, 490 U.S. at 450, 109 S.Ct. at 1902. What puzzles me is the meaning of "the same proceeding" in this context. I find it hard to visualize a joint criminal-trial-and-tax-collection proceeding. When a person is subject to both a civil imposition and a criminal prosecution, I doubt that either the defendant or the government would often want to see the two matters tried together. Was *Halper* suggesting to Congress a new form of hybrid proceeding?

The resolution of this question may lie in *Halper*'s explanation of the purpose of prohibiting successive proceedings. The Court wrote, "[W]hen the Government already has imposed a criminal penalty and seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding." *Id.* at 451 n. 10, 109 S.Ct. at 1903 n. 10. In *Halper* the civil penalty action was brought after Halper had been sentenced in the criminal prosecution. *Id.* at 437–38, 109 S.Ct. at 1896–97. Here, in contrast, the State had been pursuing the criminal prosecution, the forfeiture, and the tax for several months before Defendant entered his plea of guilty in the criminal

prosecution. The State was undoubtedly going all out to seek the maximum possible sanctions against Defendant. This was not the type of circumstance envisioned by *Halper* in which the government seeks a civil penalty only after being dissatisfied with the criminal penalty imposed by the court. If, as *Halper* suggests, Defendant would have no double-jeopardy claim if the State had sought the criminal penalty, the forfeiture, and the tax all in the same pleading, I fail to see how Defendant suffered any prejudice or how any Constitutional policy was violated by the State's pursuing the three matters concurrently as it did here. *Cf. United States v. Marcus Schloss & Co.*, 724 F.Supp. 1123, 1126–27 (S.D.N.Y.1989) (defendant cannot claim violation of Double Jeopardy Clause when it entered into consent order in civil case with knowledge of pending criminal inquiry).

The opinion in *United States v. Millan*, 2 F.3d 17 (2d Cir.1993), supports this analysis. In that case the defendants invoked *Halper* to try to bar a criminal prosecution after a civil forfeiture. The original criminal indictment was filed on August 14, 1991; the civil forfeiture complaint was filed several months later, on December 26, 1991, but was settled before the start of the criminal trial. The court held that *Halper* did not apply, writing "[W]e conclude that the government has employed a single proceeding to prosecute the [defendants], and, therefore, the proscription of the Double Jeopardy Clause does not apply." *Id.* at 19. Although the relationship between the criminal prosecution and the forfeiture in *Millan* may have been more marked than the relationship between the criminal prosecution and the tax collection here, the essence of the *Millan* analysis still applies. *Millan* said:

"[W]e are cognizant that one of the *Halper* Court's concerns was that the government might act abusively by seeking a second punishment when it is dissatisfied with the punishment levied in the first action. *See Halper*, 490 U.S. at 451 n. 10[, 109 S.Ct. at 1903 n. 10]. That problem is obviously not present in the instant case, because the civil and criminal actions were contemporaneous, and not consecutive. Indeed, the record before us gives ample indication

that it was clear to all parties that the government intended to pursue all available civil and criminal remedies, regardless of the individual outcome of any of these claims."

*Id.* at 20–21. The last sentence of the quoted passage also describes this case.

Therefore, I would distinguish the present situation from *Halper* and find that the State's simultaneous pursuit of the tax and the criminal penalty did not violate the Double Jeopardy Clause.